# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

NANCY ARABILLAS MORALES,
                        *Petitioner,*

v.

ALBERTO R. GONZALES, Attorney
General,

                        *Respondent.*

No. 05-70672

Agency No.
A77-840-127

ORDER
AMENDING
OPINION AND
AMENDED
OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
October 17, 2006—Seattle, Washington

Filed January 3, 2007
Amended February 28, 2007

Before: Dorothy W. Nelson, David R. Thompson, and
Richard A. Paez, Circuit Judges.

Opinion by Judge Thompson

**COUNSEL**

Antonio Salazar, Seattle, Washington, for the petitioner.

Peter D. Keisler, Emily Anne Radford, Molly L. Debusschere, U.S. Department of Justice, Washington, D.C., for the respondent.

---

**ORDER**

The Respondent's Motion to Amend Decision, which motion was filed February 14, 2007, is granted in part.

The first sentence of the first paragraph of Section II.A.2 of the Opinion filed January 3, 2007, and published at 472 F.3d 689, 695 (9th Cir. 2007), is amended by deleting therefrom the following language:

> Although we lack jurisdiction to review the IJ's finding that Morales was removable, we have jurisdiction to review the IJ's denial of Morales's applications for asylum and withholding of removal.

The following sentence is inserted in place of the deleted sentence:

> Although we lack jurisdiction to review the IJ's finding that Morales was removable, we have jurisdiction to review the IJ's denial of Morales's application for asylum, pursuant to 8 U.S.C. § 1252(a)(2)(B)(ii), and to review the IJ's denial of Morales's application for withholding of removal to the extent that Morales raises questions of law, including mixed questions of law and fact, or constitutional claims. *See* 8 U.S.C. § 1252(a)(2)(D); *Ramadan v. Gonzales*, No. 03-74351, ___ F.3d ___, ___ 2007

U.S. App. LEXIS 3803, at *2, 9 (9th Cir. Feb. 22, 2007).

## OPINION

THOMPSON, Senior Circuit Judge:

Nancy Arabillas Morales, a.k.a. Juan Manuel Arabillas Morales, a male-to-female transsexual, petitions for review of the Board of Immigration Appeals' ("BIA") decision summarily affirming an Immigration Judge's ("IJ") removal order and denial of her applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").

The IJ concluded that Morales was removable both because she was an alien present in the United States without admission or parole and because she had been convicted of a crime involving moral turpitude — communication with a minor for immoral purposes under section 9.68A.090 of the Revised Code of Washington. The IJ further found Morales would have been eligible for asylum but for her conviction, which the IJ determined was a particularly serious crime. Having made that decision, the IJ denied Morales's applications for asylum and for withholding of removal. The IJ also denied Morales's application for CAT relief on the merits, holding that Morales had not shown it was more likely than not she would be tortured if she were returned to Mexico.

We conclude that we lack jurisdiction to review the IJ's finding that Morales was removable because Morales had been convicted of a crime of moral turpitude. *See* 8 U.S.C.A. § 1252(a)(2)(C) (West 2005). Nevertheless, we have jurisdiction to review the denial of Morales's applications for asylum, withholding of removal, and CAT relief. *See* 8 U.S.C.A. § 1252(a)(1), (4) (West 2005). We grant Morales's petition

for review of these claims. We conclude the IJ improperly relied on a recitation of facts in the Washington appellate court's opinion affirming Morales's conviction. Relying on those facts, the IJ determined that Morales's conviction was for a particularly serious crime. A substantial portion of the facts the IJ relied upon, however, applied to offenses for which Morales had not been convicted. Therefore, we remand to the BIA with instructions to remand to the IJ for a redetermination of the "particularly serious crime" issue.

We also conclude the IJ applied an incorrect legal standard to Morales's application for CAT relief, and we remand for a redetermination of that issue as well.

## I. BACKGROUND

Nancy Arabillas Morales was born Juan Manuel Arabillas Morales on June 24, 1968. She began using the name Nancy when she was fourteen years old because she always felt that she was more of a female than a male.

At the age of fifteen, Morales began working at a bar and dressing as a woman. Around the same time, Morales moved out of her family's home because her father beat her and would not allow her to dress as a woman. At the administrative hearing, Morales testified that at the age of eight she was raped by her brother, and when she began working at the bar, she was raped by one of her customers. Morales was arrested twice and jailed for being a minor working in a bar. She was raped by several men in jail, and her cries were ignored by the prison officials. Morales also suffered at least one beating at the hands of a policeman in her hometown.

When Morales was sixteen, she moved from her hometown of San Luis Potosi to Matamoros, Mexico, to be closer to the United States. On one occasion, Morales attempted to enter the United States from Matamoros. She was picked up by seven men who attacked and raped her. Morales did not report

the incident because she believed the police would only arrest her. Morales was arrested several times in Matamoros for dressing as a woman, but she was never charged or convicted of any crime. The police often refrained from arresting her or released her soon after her arrest if she gave them money.

In 1986, Morales came to the United States. She has lived here since then and has returned to visit Mexico on only a couple of occasions — once to receive breast implants and once when her mother died. At the administrative hearing, Morales had difficulty remembering the dates of her visits to Mexico and whether she returned a third time. Morales testified that she wants to remain in the United States because she has never been assaulted here, and she is afraid that, because she is "more of a woman" now, she is more likely to be assaulted in Mexico.

In April 2002, following a jury trial, Morales was convicted of communication with a minor for immoral purposes under section 9.68A.090 of the Revised Code of Washington. *State v. Morales*, No. 50397-9-I, 2003 WL 22384696, at *1 (Wash. Ct. App. Oct. 20, 2003). She had also been charged with third degree rape of a child and third degree child molestation, but the jury was unable to reach a verdict on the rape charge and acquitted Morales of the child molestation charge. *Id.*

On November 19, 2003, the Department of Homeland Security ("DHS") charged Morales under section 212(a)(6)(A)(i) of the INA, 8 U.S.C.A. § 1182(a)(6)(A)(i) (West 2005), with being an alien present in the United States who had not been admitted or paroled. The DHS also charged Morales with being removable under section 212(a)(2)(A) (i)(I) of the INA, 8 U.S.C.A. § 1182(a)(2)(A)(i)(I) (West 2005), because she had been convicted of a crime involving moral turpitude.

At her hearing before the IJ, Morales was the only witness. The IJ found Morales removable on both charges and denied

her applications for asylum, withholding of removal, and CAT relief. The IJ stated that but for Morales's conviction for communication with a minor for immoral purposes, he would have found her eligible for asylum under *Hernandez-Montiel v. INS*, 225 F.3d 1084 (9th Cir. 2000). With regard to her conviction for communication with a minor for immoral purposes, the IJ relied on facts recited in the Washington appellate court's opinion affirming that conviction and determined she had been convicted of a particularly serious crime; for that reason, the IJ concluded Morales was ineligible for a grant of asylum or withholding of removal.

The IJ determined the only relief for which Morales was possibly eligible was relief under the CAT, but he found Morales had failed to demonstrate it was more likely than not she would be tortured if she were to return to Mexico. He based his denial on Morales's "very general" testimony, her return visits to Mexico, the mention of a Mexico City gay pride parade in the 2002 country report for Mexico, and the respect Morales's siblings living in Mexico had gained for her since she had moved to the United States and started sending them money.

In analyzing the specific incidents of abuse suffered by Morales, the IJ focused on Morales's interactions with the police and other government officials in Mexico. The IJ found it especially significant that these incidents had occurred some substantial period of time in the past, all prior to 1986. The IJ also found it significant that Morales could not remember the dates of her return visits to Mexico, including the date of her mother's death. Nevertheless, the IJ made no adverse credibility finding.

Morales appealed to the BIA, which summarily affirmed the IJ's decision, and this petition for review followed.

## II. DISCUSSION

When, as here, the BIA affirms the decision of an IJ without opinion, this court reviews the IJ's ruling as the final

agency decision. *Acosta v. Gonzales*, 439 F.3d 550, 552 (9th Cir. 2006). We review de novo the IJ's legal determinations. *Id.* The IJ's findings of fact are reviewed for substantial evidence and are treated as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Zehatye v. Gonzales*, 453 F.3d 1182, 1185 (9th Cir. 2006) (quoting 8 U.S.C.A. § 1252(b)(4)(B) (West 2005)).

A.   Jurisdiction

1.   Order of Removal

**[1]** Under 8 U.S.C. § 1252(a)(2)(C), this court lacks "jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2) . . . ." 8 U.S.C. § 1252(a)(2)(C). The offenses covered in § 1182(a)(2) include crimes involving moral turpitude. 8 U.S.C. § 1182(a)(2)(A)(i)(I).

This court has "jurisdiction 'to determine whether jurisdiction exists.' " *Matsuk v. INS*, 247 F.3d 999, 1000-01 (9th Cir. 2001) (quoting *Flores-Miramontes v. INS*, 212 F.3d 1133, 1135 (9th Cir. 2000)). This jurisdiction includes determining threshold issues, which in this case involves whether Morales is an alien who has committed an act that constitutes the essential elements of a crime involving moral turpitude. *See id.* at 1001; 8 U.S.C. §§ 1182(a)(2)(A)(i), 1252(a)(2)(C).

Morales admits she is a native and citizen of Mexico, but she does not admit committing a crime involving moral turpitude. We nevertheless conclude that her conviction for communication with a minor for immoral purposes is such a crime.

"To determine whether a specific crime falls within a particular category of grounds for removability, we apply the categorical and modified categorical approaches set forth in

*Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990)." *Cuevas-Gaspar v. Gonzales*, 430 F.3d 1013, 1017 (9th Cir. 2005). Under the categorical approach, we ask "whether the full range of conduct encompassed by the [criminal] statute constitutes a crime of moral turpitude." *Id.*

Section 9.68A.090 of the Revised Code of Washington provides that "a person who communicates with a minor for immoral purposes, or a person who communicates with someone the person believes to be a minor for immoral purposes, is guilty of a gross misdemeanor." Wash. Rev. Code § 9.68A.090(1). The essential elements of this state crime are (1) communication (through words or conduct) (2) with a minor or someone the defendant believes to be a minor (3) for immoral purposes of a sexual nature. *See State v. Hosier*, 133 P.3d 936, 941 (Wash. 2006) (stating that "communication" includes "conduct as well as words" and "immoral purpose" refers to "sexual misconduct") (citations and internal quotation marks omitted). Thus, immorality is one of the elements of the crime under Washington law.

**[2]** Moral turpitude refers generally to conduct that is "inherently base, vile, or depraved, and contrary to accepted rules of morality." *Fernandez-Ruiz v. Gonzales*, 468 F.3d 1159, 1169 (9th Cir. 2006) (quoting *Tseung Chu v. Cornell*, 247 F.2d 929, 934 (9th Cir.1957)); *see also Knapik v. Ashcroft*, 384 F.3d 84, 89 (3rd Cir. 2004) (defining moral turpitude as "conduct that is inherently base, vile, or depraved, contrary to the accepted rules of morality and the duties owed other persons, either individually or to society in general"). Sexual communication with a minor is inherently wrong and contrary to the accepted rules of morality and the duties owed between persons. The full range of conduct prohibited by section 9.68A.090 of the Revised Code of Washington categorically constitutes a crime involving moral turpitude. Therefore, without proceeding to the modified categorical approach, we conclude that Morales has been convicted of a crime involv-

ing moral turpitude, and this court lacks jurisdiction to review the IJ's final order of removal. *See* 8 U.S.C. §§ 1182(a)(2), 1252(a)(2)(C)-(D) (West 2005).

### 2.  Denial of Asylum and Withholding of Removal

Although we lack jurisdiction to review the IJ's finding that Morales was removable, we have jurisdiction to review the IJ's denial of Morales's application for asylum, pursuant to 8 U.S.C. § 1252(a)(2)(B)(ii), and to review the IJ's denial of Morales's application for withholding of removal to the extent that Morales raises questions of law, including mixed questions of law and fact, or constitutional claims. *See* 8 U.S.C. § 1252(a)(2)(D); *Ramadan v. Gonzales*, No. 03-74351, ___ F.3d ___, ___ 2007 U.S. App. LEXIS 3803, at *2, 9 (9th Cir. Feb. 22, 2007). The INA provides that "no court shall have jurisdiction to review . . . [a] decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title." 8 U.S.C.A. § 1252(a)(2)(B)(ii) (West 2005).

Section 1158(a) governs asylum applications. 8 U.S.C.A. § 1158(a) (West 2005). Thus, because decisions whether to grant asylum are exempted from § 1252(a)(2)(B)(ii)'s jurisdiction-stripping mandate, we have jurisdiction to review the IJ's denial of Morales's asylum application. *See Hosseini v. Gonzales*, 464 F.3d 1018, 1021 (9th Cir. 2006) ("We . . . have jurisdiction to review the BIA's discretionary denial of Hosseini's application for asylum.") (citing § 1252(a)(2) (B)(ii)).[1]

---

[1]Section 1252(a)(2)(B)(ii) only applies to discretionary decisions. The IJ's determination that Morales was statutorily ineligible for asylum was arguably not a "decision . . . the authority for which is specified . . . to be in the discretion of the Attorney General," 8 U.S.C. § 1252(a)(2)(B)(ii),

With regard to withholding of removal, if the decision to deny Morales that form of relief was based on the Attorney General's discretion exercised pursuant to a statute granting him discretion to make that decision, we would lack jurisdiction to review the denial. *Matsuk*, 247 F.3d at 1002. In *Matsuk*, the BIA exercised its discretion, "pursuant to Section 1231(b)(3)(B)(ii), 'to determine whether an aggravated felony conviction resulting in a sentence of less than 5 years is a particularly serious crime.' " *Id.* (citation omitted). This court was therefore jurisdictionally barred from reviewing the denial of withholding of removal. *Id.*

In denying Morales's application for withholding of removal, the IJ did not make the same determination the BIA made in *Matsuk*. Morales's conviction was for a gross misdemeanor under state law, and the IJ never determined that it constituted an aggravated felony. *Cf. Afridi v. Gonzales*, 442 F.3d 1212, 1217-18 (9th Cir. 2006) (determining first that Afridi was convicted of an aggravated felony and then considering whether the conviction, although it did not result in a sentence of at least five years, was for a particularly serious crime); *Singh v. Ashcroft*, 351 F.3d 435, 439-40 (9th Cir. 2003) (involving only a challenge to the "particularly serious crime" determination and not challenging categorization of the crime as an aggravated felony). Here, the IJ determined that Morales's *non*-aggravated felony conviction resulting in a sentence of less than five years was for a particularly serious crime. The question is whether the IJ was statutorily granted discretion to make that decision.

The government argues that 8 U.S.C. § 1231(b)(3)(B)(ii) gives the Attorney General absolute discretion to make the

because the asylum statute states that an alien "shall not" be found eligible for asylum if the Attorney General determines she has been convicted of a particularly serious crime. *See* 8 U.S.C.A. § 1158(b)(2)(A) (West 2005). In either case, we are not divested of jurisdiction to review the IJ's denial of Morales's asylum application.

determination whether *any* crime is a particularly serious crime, and therefore, we lack jurisdiction to review the IJ's decision related to withholding of removal. That interpretation broadens the discretion we have previously determined § 1231(b)(3)(B)(ii) grants to the Attorney General. *See Afridi*, 442 F.3d at 1217 (stating § 1231(b)(3)(B)(ii) gives the Attorney General "discretion to determine whether an *aggravated felony* conviction resulting in a sentence of less than five years is a particularly serious crime") (citation omitted, emphasis added); *Unuakhaulu v. Gonzales*, 416 F.3d at 931, 935 (9th Cir. 2005) (same); *Singh*, 351 F.3d at 439 (same); *Matsuk*, 247 F.3d at 1002 (same).

Whether the Attorney General's discretion should be broadened need not be determined in this case, however, because Morales presents a question of law over which this court has jurisdiction pursuant to 8 U.S.C. § 1252(a)(2)(D). *See Afridi*, 442 F.3d at 1218 (discussing appellate court's jurisdiction to consider legal questions related to the determination of whether a crime is particularly serious). Morales's appeal raises a legal question regarding what an IJ may consider in determining whether a crime is particularly serious.

**[3]** We, therefore, have jurisdiction to consider Morales's petition for review on both the asylum and withholding of removal questions. The denial of asylum is reviewable because it is specifically exempted from § 1252(a)(2)(B)(ii)'s jurisdiction-stripping provisions. The denial of withholding of removal is reviewable because Morales raises a legal question pertaining to what an IJ may refer to in deciding whether a prior offense is a particularly serious crime.

3.   Denial of CAT Protection

The government also argues we lack jurisdiction to review the IJ's denial of Morales's application for CAT relief. The government cites no specific statutory provision barring our jurisdiction to review applications for CAT relief, but instead

relies on 8 U.S.C. § 1252(a)(2)(C)-(D), which divests courts of appeal of jurisdiction to review orders of removal unless the petition for review presents a constitutional issue or question of law.

The government argues Morales's petition for review of the IJ's denial of her CAT claim presents only factual issues regarding whether she is more likely than not to be tortured if she is returned to Mexico, and therefore, this court does not have jurisdiction to consider her petition for CAT relief. We disagree.

First, without regard to whether Morales's CAT claim presents only factual issues, the IJ applied the wrong legal standard in denying her CAT application. *See infra* Part II.C. We have jurisdiction under 8 U.S.C. § 1252(a) to determine the proper legal standard for CAT relief. *See Ornelas-Chavez v. Gonzales*, 458 F.3d 1052, 1053 (9th Cir. 2006). Second, as to our resolution of factual issues, when an IJ does not rely on an alien's conviction in denying CAT relief and instead denies relief on the merits, none of the jurisdiction-stripping provisions — § 1231(b)(3)(B), § 1252(a)(2)(B)(ii), or § 1252(a)(2)(C) — apply to divest this court of jurisdiction. *See Unuakhaulu*, 416 F.3d at 936-37.

The government argues *Unuakhaulu* is not controlling because this court previously decided in *Ruiz-Morales v. Ashcroft*, 361 F.3d 1219, 1220 (9th Cir. 2004), that we lacked jurisdiction to review an alien's CAT claim where the alien was found removable and denied CAT relief because he had been convicted of an aggravated felony. There is no conflict, however, between *Unuakhaulu* and *Ruiz-Morales*. The IJ in *Ruiz-Morales* found that Ruiz-Morales had committed an aggravated felony and ordered him removed on that basis. *Ruiz-Morales*, 361 F.3d at 1220-21. In contrast, the IJ in *Unuakhaulu* "found that Unuakhaulu was removable based on his aggravated felony conviction, but neither ordered him removed on that basis nor relied on the aggravated felony

conviction in denying Unuakhaulu's application for withholding of removal and for relief under CAT." *Unuakhaulu*, 416 F.3d at 933.

**[4]** The present case is similar to *Unuakhaulu* in that the IJ did not rely on Morales's conviction in denying her relief under the CAT. Instead, the IJ concluded Morales had not shown it was more likely than not that she would be tortured if she were returned to Mexico. Therefore, the IJ's denial of CAT relief was on the merits and under *Unuakhaulu* is reviewable by this court. *See id.* at 936-37.

In sum, we have jurisdiction to review Morales's applications for asylum, withholding of removal and relief under the CAT. We now consider those applications.

B.   The IJ's Particularly Serious Crime Determination

The IJ concluded Morales would have been eligible for asylum and withholding of removal but for his finding that she had been convicted of a particularly serious crime.

**[5]** The IJ, however, improperly relied on a recitation of facts contained in the Washington appellate court's opinion affirming Morales's conviction. The IJ used that recitation of facts to determine that Morales had been convicted of a particularly serious crime. Morales contends those facts should not have been part of the IJ's consideration because they related to charges of which she was not convicted. We agree. Morales was charged with rape of a child, child molestation, and communication with a minor for immoral purposes, but she was only convicted of communication with a minor for immoral purposes. *Morales*, 2003 WL 22384696, at *1. She was acquitted of the child molestation charge, and there was a hung jury on the charge of child rape. *Id.*

**[6]** The facts recited in the Washington appellate court's opinion on which the IJ relied included evidence that Morales

exposed her breasts to a fifteen-year-old boy, fondled the genitals of the fifteen-year-old boy and his fourteen-year-old friend, and performed fellatio on the fifteen-year-old boy. *See id.* These facts applied to crimes of which Morales was not convicted. The IJ should not have relied on them in determining that the crime of which Morales was convicted was a particularly serious crime.

Morales also argues the IJ should not have relied on facts stated in the Washington appellate court's opinion because that opinion is not within the list of "judicially noticeable documents" described in *Parrilla v. Gonzales*, 414 F.3d 1038 (9th Cir. 2005). In *Parrilla*, we applied the modified categorical approach to determine whether the alien's conviction was for an aggravated felony. *Id.* at 1043. The modified categorical approach is not generally employed, however, in determining whether a petitioner has been convicted of a particularly serious crime. Instead, courts proceed directly to an analysis of the factors developed by the BIA in its *In re Frentescu* decision. *See Afridi*, 442 F.3d at 1219 (citing *In re Frentescu*, 18 I. & N. Dec. 244, 247 (BIA 1982)). These include " 'the nature of the conviction, the circumstances and underlying facts of the conviction, the type of sentence imposed, and, most importantly, whether the type and circumstances of the crime indicate that the alien will be a danger to the community.' " *Id.* (quoting *In re Frentescu*, 18 I. & N. Dec. at 247).

**[7]** The same record of conviction is used in making both the aggravated felony and the particularly serious crime determinations. According to the BIA, in consulting that record of conviction to determine the facts and circumstances underlying the alien's conviction, it is permissible to "look to the conviction records and sentencing information . . . [but] . . . not [to] engage in a retrial of the alien's criminal case or go behind the record of conviction to redetermine the alien's innocence or guilt." *In re L-S-*, 22 I. & N. Dec. 645, 651 (BIA 1999).

**[8]** We defer to the BIA's statutory interpretation that only the record of conviction and sentencing information may be considered in determining whether Morales's conviction was for a particularly serious crime. The BIA's interpretation is entitled to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984), and *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999), because the applicable statutes here are both silent regarding the basis for determining whether a conviction is for a particularly serious crime, *see* 8 U.S.C. §§ 1158(b)(2)(A)(ii) and 1231(b)(3)(B)(ii) (West 2005), and the BIA's interpretation is based on a reasonable — and therefore permissible — construction of the statute. *See Simeonov v. Ashcroft*, 371 F.3d 532, 535 (9th Cir. 2004) (stating deference is owed to the BIA's interpretation of the INA "unless that interpretation is contrary to the plain and sensible meaning of the statute"). Therefore, we defer to the BIA's interpretation in *In re L-S-* that the particularly serious crime determination, which we must consider in this case, may be made by looking only to the record of conviction and sentencing information.

We have previously defined what constitutes the record of conviction, stating it "consists of a narrow, specified set of documents that includes 'the state charging document, a signed plea agreement, jury instructions, guilty pleas, transcripts of a plea proceeding and the judgment." *Ferreira v. Ashcroft*, 390 F.3d 1091, 1095 (9th Cir. 2004) (quoting *Hernandez-Martinez v. Ashcroft*, 343 F.3d 1075, 1076 (9th Cir. 2003)). The record of conviction may also include " 'any explicit factual finding by the trial judge to which the defendant assented.' " *Parrilla*, 414 F.3d at 1043 (quoting *Shepard v. United States*, 544 U.S. 13, 16 (2005)).

Although the Washington appellate court opinion recites the evidence presented at Morales's trial, *see Morales*, 2003 WL 22384696, at *1, 3, neither it nor the trial court made any factual findings regarding the conduct for which Morales was

acquitted or on which the jury was unable to reach a verdict.**²** The Washington appellate court considered the evidence in the context of Morales's appeal challenging the sufficiency of the evidence for her conviction. *Id.* at *1-3.

"For purposes of a challenge to the sufficiency of the evidence, the appellant admits the truth of the State's evidence and all inferences that a trier of fact can reasonably draw from it." *State v. Silva*, 24 P.3d 477, 482-83 (Wash. Ct. App. 2001); *see State v. Myers*, 941 P.2d 1102, 1107 (Wash. 1997). In this context, the evidence is viewed in the light most favorable to the prosecution. *Myers*, 941 P.2d at 1107; *Silva*, 24 P.3d at 482. No factual findings are actually made, and no admissions are entered into by the defendant. Instead, for the sole purpose of determining the sufficiency of the evidence, the evidence is presumed true.

**[9]** It was from this isolated context that the IJ drew the facts and circumstances of Morales's conviction. This is far different from relying on a charging document read in conjunction with a valid plea agreement, where a defendant admits the alleged facts in a way that is binding for the purposes of conviction and subsequent proceedings. *See Lara-Chacon v. Ashcroft*, 345 F.3d 1148, 1152 (9th Cir. 2003). Here, in her appeal, Morales did not admit the truth of the evidence presented by the State for all future purposes; she simply allowed the state appellate court to assume the truth of the State's evidence for the purpose of her challenge to its sufficiency. And a substantial portion of that evidence, as recited by the Washington appellate court, applied to crimes of which she was not convicted.

**[10]** The IJ thus erred in relying on the facts recited in the

---

**²**In considering the recitation of evidence in the state appellate court's opinion as part of the "record of conviction," the IJ referred to the recitation of factual matters in that opinion as "the factual findings" of the Court of Appeals of Washington. This is not actually the case.

Washington appellate court's opinion because those facts were not admitted or established as "the circumstances and underlying facts of conviction." *See In re Frentescu*, 18 I. & N. Dec. at 247. On remand, the BIA shall remand to the IJ for a redetermination — based on the record of conviction as defined in *Ferreira*, *Parrilla*, and *In re L-S-*, as well as information relied on in Morales's sentencing proceeding — to determine whether Morales's conviction was for a particularly serious crime. The IJ shall also consider the remaining *In re Frentescu* factors, including the type of sentence imposed and whether the type and circumstances of the crime indicate that Morales will be a danger to the community. *See In re Frentescu*, 18 I. & N. Dec. at 247.

## C.   Protection Under the CAT

**[11]** To be entitled to relief under the CAT, an alien must show " 'he is more likely than not to suffer intentionally-inflicted cruel and unusual treatment' " in the country to which he is removed. *Nuru v. Gonzales*, 404 F.3d 1207, 1221 (9th Cir. 2005) (quoting *Wang v. Ashcroft*, 320 F.3d 130, 134 (2d Cir. 2003)). The IJ's factual findings in connection with a denial of CAT relief are reviewed for substantial evidence. *Ornelas-Chavez*, 458 F.3d at 1055-56. "The 'substantial evidence' standard requires us to uphold the BIA's determination if supported by 'reasonable, substantial, and probative evidence on the record.' " *Id.* at 1056 (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)). The IJ's application of legal standards, however, is reviewed de novo. *Id.* at 1055.

The IJ found Morales had not shown she was more likely than not to be tortured if she were returned to Mexico. The IJ also noted that pertinent regulations define torture as "pain or suffering . . . inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1) (2006). The IJ quoted from the regulation that defines "acquiescence of a public official" as requiring "that the public official, prior

to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." *Id.* § 208.18(a)(7). Government acquiescence is not restricted to actual control or knowledge, willful acceptance, or even an agency relationship; it includes "willful acceptance" or "willful blindness" on the part of government officials toward abuse inflicted exclusively by private individuals. *Reyes-Reyes v. Ashcroft*, 384 F.3d 782, 787 88 (9th Cir. 2004) (citing *Zheng v. Ashcroft*, 332 F.3d 1186, 1194-95 (9th Cir. 2003)).

Although the IJ quoted the correct legal standard for assessing CAT claims, his decision and the record show that he did not actually apply that standard. At the administrative hearing, the IJ asked Morales several questions about her interaction with police officers in Mexico. In his decision, the IJ mentioned briefly that Morales had been raped by men, but this was immediately followed by the IJ's discussion regarding Morales's contact with the Mexican police. During the administrative hearing, the IJ focused on whether the men who attacked Morales had any connection with the Mexican government and what position the Mexican government took toward transgender people.

After Morales testified that men other than police officers beat her up on the streets, the IJ stated that he was only concerned with government misconduct: "Well, I understand, but the men who did the egregious things to you, — and I'm, by that I'm referring to the rapes — they didn't have any connection to the Mexican government, did they?" In his decision, the IJ had only this to say as to the history of Morales's torture:

> [Morales] has reported lamentable incidents of her being "raped" by men. She was asked a number of times about interaction with government officials in Mexico such as the police. She gave very general testimony of perhaps being arrested approximately

> eight times. The respondent does not have a very good memory at all for dates or the particulars of a given incident. With regard to any misconduct by the police directed at her, she states that there were occasions that she was "slapped," and that the police "harassed" her for dressing as a woman.

IJ Decision at 5-6 (Feb. 27, 2004).

The IJ did not mention the majority of Morales's testimony, which she contends established her past torture. Most notably, the IJ's opinion included no reference to prison officers laughing and ignoring Morales's screams and cries while she was repeatedly raped by fellow inmates. The IJ discussed only direct government action, and apparently afforded no weight to the instances of violence and rape that Morales was subjected to but which she did not report because of "willful blindness" if not outright acceptance by police officers who would only throw her in jail or extort bribes from her if she attempted to report the incidents.

[12] The IJ did not state specifically that he was denying Morales's application for CAT relief based on her failure to allege a connection between her attackers and the Mexican government. *Cf. Ornelas-Chavez*, 458 F.3d at 1055; *Reyes-Reyes*, 384 F.3d at 785; *Zheng*, 332 F.3d at 1188. Nevertheless, it appears that by focusing on direct government involvement or connection with Morales's attackers, the IJ implicitly ignored this court's precedent regarding whether there was "willful blindness" on the part of government officials. *Reyes-Reyes*, 384 F.3d at 787 (citing *Zheng*, 332 F.3d at 1194-95).[3]

---

[3]The IJ also cited *In re J-E-*, 23 I. & N. Dec. 291 (BIA 2002), in concluding that Morales had not made out a claim for relief under the CAT. *In re J-E-* stands, in part, for the proposition that a petitioner must have been in the custody or control of a public official at the time of torture. *Ornelas-Chavez*, 458 F.3d at 1059. This court has previously concluded that this is an incorrect interpretation of the regulations defining torture. *Id.* (citing *Azanor v. Ashcroft*, 364 F.3d 1013, 1020 (9th Cir. 2004)).

**[13]** Because the IJ applied an erroneous legal standard regarding government conduct in connection with Morales's application for CAT relief, we remand for a determination pursuant to the proper legal standard as set forth in *Reyes-Reyes* and *Zheng*.

## III.  CONCLUSION

The IJ properly found that Morales was removable because she was an alien present in the United States without admission or parole. The IJ also properly found that Morales was removable because she had been convicted of a crime involving moral turpitude.

The IJ erred, however, in denying Morales's applications for asylum and withholding of removal by relying on facts recited in the Washington appellate court's opinion, which that court assumed to be true in its consideration of Morales's sufficiency of the evidence argument. The IJ used that statement of facts to determine that Morales's conviction was for a particularly serious crime, but a substantial portion of those facts related to crimes for which Morales had not been convicted. The IJ also applied an incorrect legal standard to determine that Morales was ineligible for CAT relief.

Petition for Review **GRANTED** in part. Case **REMANDED** for further proceedings consistent with this opinion.