**CHI HIU NGO PHAM, Petitioner,**

v.

**Alberto R. GONZALES, Attorney General, Respondent.**

No. 04–72197.

United States Court of Appeals, Ninth Circuit.

Submitted Feb. 14, 2007.*

Filed March 22, 2007.

Christopher J. Stender, Esq., Stender & Associates, Phoenix, AZ, for Petitioner.

Western Region Immigration & Naturalization Service, Laguna Niguel, CA, District Counsel, Office of the District Counsel, Department of Homeland Security, Phoenix, AZ, OIL, DOJ—U.S. Department of Justice, Civil Div./Office of Immigration Lit., Washington, DC, for Respondent.

Before: WALLACE, D.W. NELSON, and McKEOWN, Circuit Judges.

MEMORANDUM **

Pham seeks review of the Board of Immigration Appeals' (Board) decision affirming an Immigration Judge's (IJ) order denying him protection under the Conven-

---

* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

tion Against Torture[1] (CAT) and ordering him removed. We have jurisdiction under 8 U.S.C. § 1252, and we deny the petition.

Pham contends that the CAT prohibits his removal. The government argues, however, that we lack jurisdiction to review Pham's CAT claim because of his prior convictions. We determine our own jurisdiction de novo. *Ruiz–Morales v. Ashcroft*, 361 F.3d 1219, 1221 (9th Cir. 2004).

While we generally have authority to review final orders of removal, *see* 8 U.S.C. § 1252(a)(1), in 1996, Congress eliminated jurisdiction to review a final order of removal against an alien who is removable "by reason of having committed" certain enumerated criminal offenses. *See* 8 U.S.C. § 1252(a)(2)(C).

The government asserts that we lack jurisdiction under section 1252(a)(2)(C). We have previously addressed the effect of the jurisdiction-stripping provisions under section 1252(a)(2)(C) on a CAT claim, and dismissed a petition for review for a decision denying relief against the CAT, where the petitioner was an aggravated felon. *See Ruiz–Morales*, 361 F.3d at 1220. In *Unuakhaulu v. Gonzales*, however, we exercised jurisdiction over a CAT claim even when the alien committed an aggravated felony, where the IJ "did not rely at all on his conviction as the basis for denying his application for withholding of removal." 416 F.3d 931, 936 (9th Cir.2005). Most recently, in *Morales v. Gonzales*, we distinguished between *Unuakhaulu* and *Ruiz–Morales*, stating that the claim in *Unuakhaulu* was reviewable since the IJ in that case did not rely on the underlying conviction in denying relief under CAT. *Morales*, 472 F.3d 689, 697 (9th Cir.2007). In contrast, in *Ruiz–Morales*, the CAT claim was denied *because of* the aggravated felony.

*Id.* Thus, even assuming that the jurisdiction-stripping provisions under section 1252(a)(2)(C) apply, we retain jurisdiction to review a CAT claim unless the IJ relied on the underlying conviction in denying CAT relief.

Here, the IJ did not rely on the convictions in denying the CAT claim. Instead, the IJ considered the merits of the CAT claim, and ultimately denied relief. The Board also adopted the IJ's decision and stated that it "[did] not find persuasive [Pham's] arguments regarding" his eligibility for relief under the CAT. Since Pham's CAT claim was rejected on the merits, we have jurisdiction to review the CAT claim.

Accordingly, we turn to the merits of Pham's claim. Where the Board "adopts the IJ's decision while adding its own reasons, we review both decisions." *Kataria v. INS*, 232 F.3d 1107, 1112 (9th Cir.2000). The Board's interpretation and application of the immigration laws are generally entitled to deference, unless that interpretation is contrary to the plain and sensible meaning of the statute. *Simeonov v. Ashcroft*, 371 F.3d 532, 535 (9th Cir.2004). We review de novo the Board's interpretation of purely legal questions, and "for substantial evidence the factual findings underlying the [Board's] determination" that Pham was not eligible for relief under the CAT. *See Zheng v. Ashcroft*, 332 F.3d 1186, 1193 (9th Cir.2003). The Board's determination must be upheld if supported by reasonable, substantial, and probative evidence in the record. *Knezevic v. Ashcroft*, 367 F.3d 1206, 1210–11 (9th Cir. 2004).

To qualify for relief under the CAT, Pham must show that "he is more likely

1. United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, June 26, 1987, S. Treaty Doc. No. 100–200, 1465 U.N.T.S. 85.

than not to suffer intentionally-inflicted cruel and unusual treatment in the country to which he is removed." *Morales,* 472 F.3d at 700 (citing *Nuru v. Gonzales,* 404 F.3d 1207, 1221 (9th Cir.2005)). Pham has the burden of establishing that he is more likely than not to be tortured. *See Zheng,* 332 F.3d at 1194; 8 C.F.R. § 208.16(c). Section 208.16(c)(3) further states that "all evidence relevant to the possibility of future torture shall be considered, including, but not limited to:

(i) Evidence of past torture inflicted upon the applicant;

(ii) Evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured;

(iii) Evidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and

(iv) Other relevant information regarding conditions in the country of removal."

■ Pham testified that he was "afraid" that he would be "sentenced to kidnaping" and have "some problems" if he returned to Vietnam. He stated that he was afraid of the government, but had difficulty identifying who was in political power when he left the country and currently. He further testified that while in Vietnam, he was not allowed to attend school or work, and that he "would not be subject to having a life, which is a good life" if he were forced to return. He did not testify as to ever having been tortured while in Vietnam.

Pham's mother testified that she did not like the government-controlled education program, and that she home-schooled her children. She opined that she thought Pham would have problems in Vietnam. She also testified that she had visited Vietnam a "few times" since leaving in 1990, most recently in the last year. She was also aware that many of the people who were in reeducation camps were subsequently let out. She did not testify to ever having been tortured.

There is substantial evidence supporting the determination that Pham failed to show that he was more likely than not to be tortured upon returning to Vietnam. Neither Pham nor his mother testified to ever having been tortured. His mother had in fact returned to Vietnam a few times without incident, most recently in the last year. Further, there is no reason to believe that Pham had strong political ties himself, particularly since he had difficulty identifying the current and past political governments. In light of this evidence, the Board's rejection of Pham's CAT claim was supported by reasonable, substantial, and probative evidence.

Petition denied.