**Deda Nikoll MAKAJ, Petitioner,**

v.

**Michael B. MUKASEY, Attorney General, Respondent.**

No. 07–70328.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 10, 2008.

Filed Jan. 22, 2009.

---

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

Elias Paul Batchelder, Esquire, Habeas Corpus Resource Center, San Francisco, CA, Robert G. Schaffer, Esquire, Lewis & Roca, LLP, Phoenix, AZ, for Petitioner.

Corey Leigh Farrell, Richard M. Evans, Esquire, Assistant Director, Joan Estelle Smiley, Esquire, Trial, U.S. Department of Justice Civil Division/Office of Immigration Litigation, Washington, DC, District Counsel Phoenix, Esquire, Office of the District Director U.S. Department of Homeland Security, Phoenix, AZ, Ronald E. Lefevre, Office of the District Counsel Department Of Homeland Security, San Francisco, CA, for Respondent.

Before: W. FLETCHER, BERZON and N.R. SMITH, Circuit Judges.

## MEMORANDUM *

Deda Nikoll Makaj, a native and citizen of Albania and a legal permanent resident in the United States, seeks review of the decision of the Board of Immigration Appeals ("BIA") to uphold an immigration judge's ("IJ") denial of relief under the Convention Against Torture ("CAT"). Makaj contends that the BIA used the wrong legal standard in assessing the likelihood that he would face torture if returned to Albania. His contention raises a question of law over which this Court has jurisdiction pursuant to 8 U.S.C. § 1252(a)(2)(D), and which we review *de novo. See Murillo–Espinoza v. INS,* 261 F.3d 771, 773 (9th Cir.2001). Because we conclude that the BIA did use an erroneous legal standard, we grant Makaj's petition.

## I. Legal standard

The regulations implementing CAT define torture as:

---

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 208.18(a)(1). Extrajudicial killing, if committed for any of these purposes, can constitute "torture" within the meaning of CAT. *See Bromfield v. Mukasey,* 543 F.3d 1071, 1079 (9th Cir.2008).

Further, to demonstrate eligibility for relief under CAT, a petitioner must show that, if he is returned to his home country, it is "more likely than not" that a government official or a person acting in an official capacity would torture him or aid or acquiesce in his torture by others. *See* 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1); *see also Kamalthas v. INS,* 251 F.3d 1279, 1283–84 (9th Cir.2001). If a petitioner shows that he suffered torture in the past, he is entitled to a rebuttable presumption that he would more likely than not be tortured in the future. *Nuru v. Gonzales,* 404 F.3d 1207, 1217–18 (9th Cir.2005). To rebut that presumption, the government must show that conditions in the home country have changed with respect to the particular individual's situation. *Id.* at 1218 n. 6 (quoting *Garrovillas v. INS,* 156 F.3d 1010, 1017 (9th Cir.1998)).

## II. Discussion

The BIA correctly acknowledged that, under Ninth Circuit case law, Makaj's showing of past torture gives rise to a presumption of future torture. Restating the right legal standard is not enough, however; the BIA must also actually apply that standard, rather than another one. *See Morales v. Gonzales,* 478 F.3d 972, 983 (9th Cir.2007). In this case, the BIA's reasoning reveals that it applied an erroneous standard in assessing whether conditions in Albania had changed sufficiently to rebut the presumption that Makaj would more likely than not be tortured if removed to Albania.

The BIA explained that two of the IJ's findings were sufficient to "rebut the presumption [of future torture] in this case." First, Makaj "voluntarily returned to Albania on three or four occasions after 1992, using his true and correct name, and he was allowed to enter and exit Albania on each occasion without difficulty." Second, the U.S. State Department country conditions profile for Albania from 2004 ("2004 Country Profile") reported that "[t]here is no indication that the former Communists—whether in the Government, opposition, or enforcement organizations—have sought retribution against opponents of the Communist regime or the many individuals who have returned to Albania after having fled abroad." The fact that the BIA considered these two findings dispositive of Makaj's case demonstrates that the BIA was applying an erroneous legal standard.

Taking the findings in reverse order, Makaj does not claim that he fears torture at the hands of "former Communists ... in the [current] Government, opposition, or enforcement organizations." Instead, he fears that government officials would *acquiesce* in the torture at the hands of *private* Albanians—former Communists or Communist sympathizers who hate his family and seek revenge against him. The sentence the IJ quoted from the 2004 Country Profile speaks only to the fre-

quency of retributive violence by individuals in an official capacity; it says nothing about the frequency of vigilante violence, mob justice, and revenge killings perpetrated by private individuals with the acquiescence of the authorities.

Because the BIA relied solely on evidence pertaining to retribution by government officials, it failed to consider whether country conditions had changed *with respect to Makaj's particular situation.* This was error. As we have explained in the asylum context,

> [i]nformation about general changes in the country is not sufficient [to rebut the presumption that arises from past persecution]. In the absence of any explanation as to how any change in conditions in the [country] would serve to rebut [the petitioner's] particular fear of future persecution, the presumption stands unrebutted.

*Garrovillas,* 156 F.3d at 1017 (citations omitted). *See also Lopez v. Ashcroft,* 366 F.3d 799, 805 (9th Cir.2004) (evidence from a State Department report that " 'overall human rights situation continued to improve measurably' " was "not sufficiently individualized" to rebut the presumption of future persecution at the hands of nongovernmental guerilla groups); *Molina–Estrada v. INS,* 293 F.3d 1089, 1096 (9th Cir.2002) ("A State Department report on country conditions, standing alone, is not sufficient to rebut the presumption of future persecution when a petitioner has established past persecution."). As we held in *Nuru,* the same is true in the context of a claim for relief under CAT. *Nuru,* 404 F.3d at 1218 n. 6.

Second, the BIA pointed to the IJ's finding that Makaj traveled back to Albania on three or four occasions since he fled in 1992, and noted that on none of those occasions did Makaj encounter any problems at the border. But, again, Makaj's claim is not that he is in danger of being tortured by government officials, such as customs officers. Rather, he fears torture by private individuals with government acquiescence.

With respect to this fear, the record shows that Makaj did have grounds for believing that he was in danger from private individuals during each of his visits, and that he took care to hide himself from such individuals. For example, during his 1997 visit, when he returned to Albania to see his mother and attend the funeral of his brother Rrok, Makaj "rarely went out [of his mother's house] for fear of what might happen to [him]." There is other substantial record evidence pertinent to the continued threat from private individuals: the attempted murder by hand grenade of his brother George in 1996; the murder of his brother Rrok in 1997; and the threatening telephone call to his wife in 1997. Although these facts are directly relevant to Makaj's fear of torture by nongovernment actors with the government's acquiescence, neither the IJ nor the BIA alluded to any of that evidence, confirming that the agency was applying a standard that focused solely on future *governmental* torture. Indeed, the IJ stated in his oral decision that "[w]hile the respondent's family under the [C]ommunist regime may have experienced persecution and torture[,] there is *no evidence* that any such activity has occurred since ... the [C]ommunist regime ... f[ell] [in 1992]," a statement that only makes sense if "such activity" refers solely to persecution and torture carried out by governmental officials. (Emphasis added).

We conclude that the agency employed an erroneous legal standard when assessing whether the government had overcome the presumption that Makaj would more likely than not be tortured if removed to Albania. *Cf. Morales,* 478 F.3d at 984.

We therefore remand for reconsideration according to the correct legal standard. *See id.*; *Reyes–Reyes v. Ashcroft*, 384 F.3d 782, 787 n. 2, 787–88 (9th Cir.2004); *Azanor v. Ashcroft*, 364 F.3d 1013, 1019–21 (9th Cir.2004).

PETITION FOR REVIEW GRANTED.

---

\* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

\*\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.