MEMORANDUM *
Iman Khalil Suradi (“Suradi”), a native and citizen of Jordan, petitions for review of the Board of Immigration Appeals’ (BIA) rejection of her application for deferral of removal under the Convention Against Torture (CAT). We grant the petition and remand to the BIA for further proceedings consistent with this disposition.
To establish eligibility for deferral of removal under CAT, Suradi must demonstrate “only a chance greater than fifty percent that [she] will be tortured if removed” to Jordan. Hamoui v. Ashcroft, *551 389 F.3d 821, 827 (9th Cir.2004) (citations omitted); see 8 C.F.R. §§ 1208.16(c)(2), 1208.17(a). The torture may be “inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.” 8 C.F.R. § 1208.18(a)(1). “Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity.” Id. § 1208.18(a)(7); see also Ornelas-Chavez v. Gonzales, 458 F.3d 1052, 1060 (9th Cir.2006) (“It is enough that public officials could have inferred the alleged torture was taking place, remained willfully blind to it, or simply stood by because of their inability or unwillingness to oppose it.”).
When, as here, the BIA does not express disagreement with any portion of the IJ’s decision, cites Matter of Burbano, 20 I. & N. Dec. 872, 874 (BIA 1994), and adds its own review of the evidence and the law, this court reviews both the BIA’s and the IJ’s decisions. See Joseph v. Holder, 600 F.3d 1235, 1239-40 (9th Cir.2010). We review the agency’s findings of fact in connection with a denial of CAT relief for substantial evidence. Morales v. Gonzales, 478 F.3d 972, 983 (9th Cir.2007). “The substantial evidence standard requires us to uphold the BIA’s determination if supported by reasonable, substantial, and probative evidence on the record.” Id. (internal quotation marks and citation omitted). To overturn the agency’s decision, Suradi must show that “the evidence not only supports ... but compels ” reversal. Pedro-Mateo v. I.N.S., 224 F.3d 1147, 1150 (9th Cir.2000) (citation omitted).
In evaluating the propriety of relief under CAT, a petitioner’s testimony alone, if credible, “may be sufficient to sustain the burden of proof without corroboration.” 8 C.F.R. § 1208.16(c)(2). Because the IJ did not make an adverse credibility finding in Suradi’s removal hearings, the BIA was required to accept Suradi’s testimony, and all reasonable inferences to be drawn from it, as true. Ornelas-Chavez v. Gonzales, 458 F.3d 1052, 1056 (9th Cir.2006). In addition, “[t]he regulations ... explicitly require the IJ to consider ‘all evidence relevant to the possibility of future torture.’ ” Aguilar-Ramos v. Holder, 594 F.3d 701, 705 n. 6 (9th Cir.2010) (quoting 8 C.F.R. § 208.16(c)(3)) (rejecting the government’s contention that the Board is not required to cite and refute every piece of evidence on appeal).

A. Likelihood of Torture

The record compels the conclusion that Suradi will more likely than not be killed in an honor killing if she is removed to Jordan. Suradi testified that it is “something definite” that she will be killed due to the shame of her extramarital affairs and drug conviction. Under § 1208.16(c)(2), this testimony alone, even if not corroborated, may be sufficient to sustain her burden. However, her brother corroborated her testimony, stating, “It’s not I think. I know that she will [be killed].” In addition, Suradi provided several articles and country reports describing the problem of honor killings in Jordan, a fact which the IJ acknowledged.
Substantial evidence does not support the IJ’s finding that Suradi has not reported any threats from her family or husband. This finding is directly contrary to Suradi’s credible testimony; her declaration in support of her asylum application asserts that her husband has explicitly threatened to kill her to “cleanse the dishonor” caused by her extramarital affairs in the U.S. Suradi also declares that her family has “threatened that I must end [an extramari *552 tal] relationship otherwise I would pay the price.”
Because the IJ and BIA were required to accept Suradi’s testimony as true, Ornelas-Chavez, 458 F.3d at 1056, and the testimony of both Suradi and her brother indicate it is nearly certain that Suradi will be killed, the record compels the conclusion that it is more likely than not that Suradi will be subjected to an honor killing by her family or estranged husband. There is no evidence in the record rebutting her credible testimony.

B. Government Acquiescence

The IJ’s finding that the Jordanian government does not acquiesce in honor killings is not supported by substantial evidence. Purporting to rely on the State Department’s human rights report on Jordan, the IJ found that there were only sixteen honor killings in Jordan in 2008, and that these killings were prosecuted by the government. Therefore, the IJ concluded that Suradi had failed to meet her burden to show that the government would more likely than not be unable or unwilling to prevent the harm. However, the IJ’s finding was based on a clear misreading of the State Department report. The report simply noted that there were only sixteen prosecutions of honor killings in 2008, and that many more instances of honor killings may have gone unprosecuted or unreported. The Human Rights Watch report in the record agreed, stating, “Undoubtedly there are more ‘honoi’’ killings than the average of fifteen per year that the government has recorded since 1999.... The Jordan Times ... has consistently reported higher numbers than the government. ...”
Moreover, even if the IJ’s statement accurately reflected the record evidence, he failed to explain how the relative rarity of honor killings is relevant to the question presented here. Namely, assuming that only sixteen women are murdered each year, this would be cold comfort if Suradi were among that unfortunate cohort and the government was unable or unwilling to prevent those murders, as she alleges. Indeed, even if the government had prosecuted all honor killings, whatever their number, this finding is not probative to the question of whether the Jordanian government acts to prevent honor killings. Indeed, according to the State Department, the only action the government takes before these murders take place is to “regularly placef ] potential victims of honor crimes in involuntary protective custody in ... a detention facility where some have remained for more than 20 years.” Thus, the record suggests that the government’s purported “protection” amounts to forced imprisonment. Worse, according to Human Rights Watch, an imprisoned woman may only be released to a male family member. Because a family member is usually the perpetrator of an honor killing, a male relative may pick a woman up from prison only to kill her.
The IJ also fails to address Suradi’s credible testimony regarding government acquiescence. Suradi presented evidence that Jordanian officials are willfully blind to — if not supportive of — honor killings. In addition to her own declaration that the “Jordanian government cannot and will not protect me from death,” and her testimony that in the past the mayor and the police would not intervene when her husband abused her, Suradi’s brother Ismail stated that the police will not be able to protect Suradi from her family if she is returned to Jordan. He explained, “There’s no such a thing as police protection in Jordan. I mean it just doesn’t exist.”
Other evidence in the record supports their statements. A Human Rights Watch report states that “[p]olice rarely investí- *553 gate ‘honor’ killings, seldom take any initiative to deter these crimes, and typically treat the killers as vindicated men.” Provisions of the Jordanian criminal code (Articles 98 and 340) provide for drastically reduced sentences for perpetrators of hon- or killings, and the State Department report itself states that the typical sentence was less than six months, Jordan’s government has blocked efforts at reform. A news report indicates that Jordan’s parliament has refused to repeal these leniency provisions on grounds that tougher penalties for honor killings would lead to more adultery.
Since the IJ’s and BIA’s decision rested on a misreading of the State Department’s report, however, they did not address and weigh the evidence in the record detailed above, including Suradi’s credible testimony. Instead of making factual determinations in the first instance, therefore, we remand to the BIA to consider fully the reports cited above and the record as a whole. See She v. Holder, 629 F.3d 958, 963-64 (9th Cir.2010) (remand to the BIA for further factfinding is appropriate where the BIA’s fails to provide a proper explanation for its findings).
Petition GRANTED and REMANDED.

 This disposition is not appropriate for publication and is not precedent except as provided by 9 th Cir. R. 36-3.