Luis REYES–REYES, Petitioner,

v.

John ASHCROFT, Attorney
General, Respondent.

No. 03–72100.

United States Court of Appeals,

Ninth Circuit.

Argued and Submitted May 13, 2004.

Filed Sept. 13, 2004.

Carter C. White, King Hall Civil Rights Clinic, University of California School of Law, Davis, California; Robert T. Grieg, Anil Kalhan, and Joseph Landau, Cleary Gottlieb, Steen & Hamilton, New York, New York, for the petitioner.

Peter D. Keisler, Linda S. Wendtland, and Shelley R. Goad, Office of Immigration Litigation, U.S. Department of Justice, Washington, DC, for the respondent.

Before McKEOWN, BYBEE, Circuit Judges, and BREYER,* District Judge.

Opinion by Judge McKEOWN; Concurrence by Judge BYBEE.

McKEOWN, Circuit Judge:

Luis Reyes–Reyes petitions for review of a decision of the Board of Immigration Appeals (BIA) denying his application for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). Because Reyes's asylum claim was denied as untimely, we lack jurisdiction to reach its merits. We have jurisdiction, however, to review the BIA's denial of his withholding and CAT claims. Because the immigration judge (IJ) invoked the wrong standard in analyzing both of these claims, we grant the petition and remand for further consideration.

---

* The Honorable Charles R. Breyer, United States District Judge for the Northern District of California, sitting by designation.

## BACKGROUND

Luis Reyes–Reyes, a citizen of El Salvador, fled to the United States as a teenager twenty-five years ago. Motivated by fear of persecution, Reyes entered this country unlawfully and never legalized his presence. Faced now with the immigration consequences of his undocumented status, Reyes continues to fear persecution should he return to El Salvador.

Reyes is a homosexual male with a female sexual identity. He dresses and looks like a woman, wearing makeup and a woman's hairstyle. Although Reyes has not undergone sex reassignment surgery, he has had a characteristically female appearance, mannerisms, and gestures for the past sixteen years. He has a "deep female identity" and has gone by female names such as Josephine, Linda, and Cukita. Reyes is currently in custody, where he is held separately from the other inmates for his own protection.

Reyes's original reasons for leaving El Salvador involve disturbingly violent circumstances. When Reyes was thirteen and living with his family in San Salvador, he was kidnaped by a group of men, taken to a remote location in the mountains, and raped and beaten because of his homosexual orientation.[1] Reyes's attackers threatened future brutality if he reported their actions. Fearing reprisal, he never told his family or the authorities about these crimes. Believing that "homosexuals are not welcome in my home country," Reyes fled El Salvador after he turned seventeen.

Reyes now faces the prospect of return to El Salvador. Removal proceedings were commenced after Reyes's undocumented presence came to the attention of immigration authorities. In 2002, Reyes appeared pro se before an IJ, conceded removability, and applied for asylum, relief under the CAT, and withholding of removal. At the hearing, Reyes explained his fears about returning to El Salvador and related the story of his kidnaping and rape and explained his fears that if he returns to El Salvador, he will be discriminated against, abused, raped, or possibly even killed because of his appearance and sexual orientation. The IJ questioned Reyes repeatedly about why he failed to report the crimes and whether "anyone in the Government or acting on behalf of the Government of El Salvador [would] want to torture you."

At the conclusion of the proceedings, the judge denied Reyes's applications for withholding and CAT relief on the merits, and denied his asylum petition as untimely filed. In an oral decision, the IJ explained that Reyes had failed to satisfy the requirements of the law because he "has failed to state that anyone in the government or acting on behalf of the government tortured him." The IJ also ruled that Reyes had failed to establish past persecution for the purposes of withholding of removal under 8 U.S.C. § 1231(b). The judge did not make an adverse credibility finding.

Sometime later, Reyes obtained pro bono representation and filed an appeal

---

1. It is not clear from the record whether Reyes's female sexual appearance was fully manifest at this age. We note, however, that Reyes's sexual orientation, for which he was targeted, and his transsexual behavior are intimately connected. As we have recognized, it is well-accepted among social scientists that "[s]exual identity is inherent to one's very identity as a person.... Sexual identity goes beyond sexual conduct and manifests itself outwardly, often through dress and appearance." *Hernandez–Montiel v. INS*, 225 F.3d 1084, 1093 (9th Cir.2000) ("Sexual orientation and sexual identity are immutable.... Many social and behavioral scientists 'generally believe that sexual orientation is set in place at an early age.' ").

with the Board of Immigration Appeals (BIA), attaching to his brief numerous excerpts from human rights organizations, government and news sources detailing El Salvador's hostile political and cultural climate towards male homosexuals with female identity. Reyes also filed a motion to remand, attaching several pieces of new evidence, including the affidavit of an expert on Latin American culture. In a one-judge order, the BIA summarily affirmed the IJ's decision pursuant to 8 C.F.R. § 1003.1(e)(4), and denied Reyes's motion to remand. Reyes now petitions for review of the BIA's decision.

## DISCUSSION

This case presents a series of discrete legal issues. Although the parties argue at length over inclusion in the record of evidence of El Salvador's country conditions and political climate and the merits of Reyes's claim, we need not address these disputes because our resolution of the justiciable issues rests on the ground that the BIA employed an erroneous legal standard in evaluating Reyes's application.

■ The slight quirk presented by our review of the BIA's bare affirmance without opinion of the IJ's decision requires us to apply the well-known "simple but fundamental rule of administrative law": We "must judge the propriety of such action solely by the grounds invoked by the agency." *Securities & Exchange Comm'n v. Chenery Corp.*, 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). Thus, although the agency's summary affirmance under 8 C.F.R. § 1003.1(e)(4) "only means that the BIA deemed any errors by the IJ to be harmless," *Falcon Carriche v. Ashcroft*, 335 F.3d 1009, 1013 (9th Cir.2003) (describing the analogous process pursuant to 8 C.F.R. § 1003.1(a)(7)), as a practical matter, we may review only the reasoning presented

by the IJ. *See Chenery*, 332 U.S. at 196, 67 S.Ct. 1575 ("[T]he court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis."). In effect, when the BIA invokes its summary affirmance procedures, it pays for the opacity of its decision by taking on the "risk [of reversal] ... in declining to articulate a different or alternate basis for the decision" should the "reasoning proffered by the IJ [prove] faulty." *Falcon Carriche*, 335 F.3d at 1014. In this posture, we review de novo the IJ's legal conclusions. *See Azanor v. Ashcroft*, 364 F.3d 1013, 1018 (9th Cir.2004).

## I. JURISDICTION OVER THE ASYLUM CLAIM

■ Aliens present in the United States may apply for asylum under 8 U.S.C. § 1158(a)(1) so long as they file their application "within 1 year after the date of the alien's arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). If the alien arrived before April 1, 1997, he has one year from that date to file. 8 C.F.R. § 1208.4(a)(2)(ii). Judicial review of decisions made under § 1158(a)(2) is completely foreclosed. *See* 8 U.S.C. § 1158(a)(3) ("No court shall have jurisdiction to review any determination of the Attorney General under paragraph (2)."); *Hakeem v. INS*, 273 F.3d 812, 815 (9th Cir.2001) ("[W]e need only determine whether the IJ acted under section 1158(a)(2).... [If so,] under section 1158(a)(3), we lack jurisdiction to review the IJ's determination that [the applicant] failed to file his asylum application within one year of his arrival in the United States.").

Reyes filed his asylum petition on July 8, 2002, well beyond the one-year deadline, and the IJ determined that Reyes was "subject to the one year bar and, therefore, ineligible for asylum under Section

[1158(a)(2)]." We therefore lack jurisdiction to review this decision.

## II. CONVENTION AGAINST TORTURE

■ The question we consider is whether the IJ applied the correct legal standard under the CAT by requiring Reyes to prove that he suffered torture at the hands of a government agent. Under the implementing regulations of the CAT, an applicant qualifies for withholding of removal if "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). In evaluating the likelihood of future torture, the IJ must consider evidence of past torture. 8 C.F.R. § 208.16(c)(3)(i). "Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for ... any reason based on discrimination of any kind ... by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1).

■ Torture is not limited to acts that occur "under public officials' custody or physical control." *See Azanor*, 364 F.3d at 1019. To the contrary, "a petitioner may qualify for withholding of removal by showing that he or she would likely suffer torture while under *private parties'* exclusive custody or physical control." *Id.* (emphasis in original). If the torture is at the hands of private individuals, the petitioner's burden is to show the government's "consent or acquiescence." 8 C.F.R. § 208.18(a)(1). "Acquiescence," we have recently explained, is not limited to "actual knowledge, or willful acceptance"; the "willful blindness" of government officials suffices. *Zheng v. Ashcroft*, 332 F.3d 1186,

1194–95 (9th Cir.2003). In *Zheng*, we underscored Congress's intent to create a broad definition of "acquiescence of a public official [to torture]" against the BIA's attempt to narrow its scope. *Id.* at 1196 ("The Convention does not require, as the INS purports, the government to '*knowingly* acquiesce' to such torture.").

Here, the judge applied to Reyes a standard even more stringent than the one urged by the INS and rejected by the court in *Zheng*. According to the immigration judge, "To establish withholding or deferral of removal under Article 3 of the Convention Against Torture, an alien must establish that it is more likely than not that he or she would be tortured in the country of removal *by someone in the government or acting on behalf of the government* if returned to that country. ... [The] Torture Convention requires that someone in the government or acting on behalf of the government torture the respondent." He went on to add that the "Torture Convention requires that someone in the government or acting on behalf of the government torture the respondent." In other words, the judge required Reyes to show that he would suffer torture "by or at the instigation of" the government. *See* 8 C.F.R. § 208.18(a)(1). This standard contravenes the plain language of the governing regulation.

Under 8 C.F.R. § 208.18(a)(1), torture may occur "by or at the instigation of *or with the consent or acquiescence*" of the government. *Id.* (emphasis added). By rejecting Reyes's petition because he had "failed to state that anyone in the government or acting on behalf of the government tortured him," the IJ effectively excised the phrase "or with the consent or acquiescence of" from the regulation.[2]

---

2. Although the judge did reference in passing the language "with the consent or acquiescence of a public official," it is clear from the record that he did not apply that standard.

■ Neither the IJ nor the BIA may redefine "torture" in defiance of the explicit text of the regulations and the clear intent of Congress. *See Zheng,* 332 F.3d at 1196. ("The definition of torture has been properly left, not to the INS, but to Congress...."). Here, the standard employed by the IJ follows neither the unambiguous regulatory language nor the clear Congressional intent. *See id.* (explaining that the intent of Congress is clear: "[A]cquiescence of a public official requires 'awareness' and not 'knowledge' or 'willful acceptance' "; a fortiori, acquiescence does not require actual control or an agency relationship (alterations omitted from original)). The BIA's action to the contrary requires remand. *See Azanor,* 364 F.3d at 1020–21 (holding that the BIA's application of the wrong legal standard warranted remand, and refusing to conduct an independent harmless error review of the record); *see also INS v. Ventura,* 537 U.S. 12, 16, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) (per curiam) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

We note that remand, besides being the proper legal course, is the route favored by important policy concerns. The BIA's decision is not only at odds with Congress's intent, it is inconsistent with its own governing regulations. In the face of this type of error, we share the view of our colleagues in the Second Circuit: "Careless observance by an agency of its own administrative processes weakens its effectiveness in the eyes of the public because it exposes the possibility of favoritism and of inconsistent application of the law." *See Montilla v. INS,* 926 F.2d 162, 169 (2d Cir.1991). When the BIA at times acknowledges the "consent or acquiescence" prong of the regulation, *see, e.g., Matter of S–V–,* 22 I. & N. Dec. 1306, 2000 WL 562836 (BIA 2000), and at times disregards it, *see, e.g., Azanor,* 364 F.3d at 1019, the net result is unpredictability and irregularity that undermines public confidence in the immigration process. Remand is thus doubly appropriate here because it enhances public faith in the adjudicative system and creates an incentive for the agency to consistently apply a coherent set of rules. *See Montilla,* 926 F.2d at 169 ("As a practical matter, to remand for agency compliance with its own rules would actively encourage such compliance.").

### III. WITHHOLDING OF REMOVAL

■ Independent of the success of the asylum and CAT claims, Reyes may not be removed to El Salvador if his "life or freedom would be threatened in that country because of [his] ... membership in a particular social group." 8 U.S.C. § 1231(b)(3)(A). Reyes is entitled to the presumption that such a threat exists if he demonstrates that he has suffered such persecution in the past. 8 C.F.R. § 208.16(b)(1). If Reyes is unable to show that he was persecuted in the past, he may nevertheless be entitled to relief if he can "establish that it is more likely than not that he ... would be persecuted" in the future. 8 C.F.R. § 208.16(b)(2). As with relief under the CAT, the persecution need not be inflicted by agents of the government. Reyes may show that either "the government or ... persons or organizations which the government is unable or unwilling to control" are responsible for the persecution. *See Hernandez–Montiel v. INS,* 225 F.3d 1084, 1097 (9th Cir.2000).

---

Indeed, he failed to address in any way whether any public official might have been "aware[ ] of such activity and thereafter breach[ed] his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 208.18(a)(7).

The IJ's denial of Reyes's withholding claim focused primarily on the past persecution prong, reasoning that "[w]hat happened to the respondent ... was not a form of persecution within the meaning of [8 U.S.C. § 1231(b)(3)].... I, therefore, find that he has failed to meet his burden of proof." The judge's only inquiry into the likelihood of future persecution relies, just as with Reyes's CAT claim, on the application of the wrong legal standard: "This Court questioned respondent and asked respondent if *anyone in the government or acting on behalf of the government* would want to torture him. Respondent testified no.... I have listened to the respondent's testimony and I find that he has failed to meet his burden of proof in establishing relief under Section 241(b) of the [Immigration and Nationality] Act." Thus, we grant the petition as to the withholding claim and, as with the CAT claims, remand to the BIA.

We decline to reach Reyes's additional argument that reversal is proper because the immigration judge imposed a per se rule requiring a victim of persecution to report the act.[3] In our view, our decision better tracks the path of judicial caution; upon remand, the BIA will have ample opportunity to reconsider Reyes's withholding and CAT claims in light of all of the evidence in the record. *See Ventura*, 537 U.S. at 17, 123 S.Ct. 353 ("The agency can bring its expertise to bear upon the matter; it can evaluate the evidence; it can make an initial determination; and, in doing so, it can, through informed discussion and analysis, help a court later determine whether its decision exceeds the leeway that the law provides."); *cf. Ramirez–Alejandre v. Ashcroft*, 320 F.3d 858, 864 (9th Cir.2003) (explaining that in a related context, the BIA does not "act[ ] as a traditional appellate administrative body" but is "vested with the authority to exercise the discretion .... to consider the facts as they exist[ ] at the time of the BIA decision").

Accordingly, the petition is **DISMISSED** in part, **GRANTED** in part, and the case is **REMANDED**. Costs on appeal shall be awarded to the petitioner.

BYBEE, Circuit Judge, concurring and concurring in the judgment:

I join Part I of the court's opinion and agree with much of what is written in Parts II and III, but I do not join those sections. I nevertheless agree that the petition should be granted and the matter remanded to the BIA.

INS's regulations implementing the Convention Against Torture define torture as severe pain or suffering, intentionally inflicted on a person "at the instigation of or with the consent of or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1) (2004). The regulations further provide that "[a]cquiescence of a public official requires that the public official, prior to the activity constituting torture, have aware-

---

**3.** We note that the imposition of such a bright line rule would indeed be troubling, especially in light of evidence in the record that rape victims in El Salvador regularly underreport such crimes due to the poor response of the authorities, and in our view of our precedent documenting that the national police have been involved in "hitting, insulting, and threatening" homosexuals. *See Hernandez–Montiel*, 225 F.3d at 1089 (observing that "gay men with 'female' sexual identities ... are a separate social entity within Latin American society" that is "subjected to greater abuse than others"); *see also Paramasamy v. Ashcroft*, 295 F.3d 1047, 1053 & n. 3 (9th Cir.2002) (observing that rape is generally underreported and that "the assumption that the timing of a victim's disclosure of sexual assault is a bellwether of truth is belied by the reality that there is often delayed reporting of sexual abuse").

ness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." *Id.* § 208.18(a)(7). We have held that "[t]he correct inquiry ... is whether a respondent can show that public officials demonstrate 'willful blindness' to the torture of their citizens by third parties, or as stated by the Fifth Circuit, whether public officials 'would turn a blind eye to torture.'" *Zheng v. Ashcroft,* 332 F.3d 1186, 1196 (9th Cir.2003) (quoting *Ontunez–Tursios v. Ashcroft,* 303 F.3d 341, 355 (5th Cir.2002)). Our decisions "leave little doubt" that an applicant for withholding of removal "may qualify for Torture Convention relief without demonstrating that she would suffer torture while in public officials' custody or physical control." *Azanor v. Ashcroft,* 364 F.3d 1013, 1019 (9th Cir.2004). It is sufficient if the applicant demonstrates that "she would likely suffer torture while under *private parties'* exclusive custody or physical control" so long as public officials consent or acquiesce to the torture. *Id.* (emphasis in original).

The principal opinion faults the immigration judge for requiring Reyes–Reyes to prove that he was tortured or will be tortured by someone in the government of El Salvador if he is returned. According to the opinion, "the IJ effectively excised the phrase 'or with the consent or acquiescence of' from the regulation." Maj. op. at 787. I do not believe that the IJ misstated the rule, although he could have been more clear at the outset. The IJ's oral opinion, as quoted in the principal opinion, states that "an alien must establish that it is more likely than not that he or she would be tortured in the country of removal by someone in the government or acting on behalf of the government if returned to that country." Maj. op. at 787. In the same paragraph, however, the IJ went on: "Torture must be inflicted by or at the instigation of a public official or someone acting in an official capacity, or it must be inflicted *with the consent or acquiescence* of a public official, or person acting in an official capacity." (Emphasis added). That is a complete and correct statement of the law.

The IJ rejected Reyes–Reyes claims because the IJ found that Reyes–Reyes "never reported [his kidnaping and rape] to anyone." Because he was only 13 at the time of this horrific incident he "never reported these incidents to his family nor the police ... because of the threat of these street individuals. He felt that he might be hit or something worse would happen to him." When the IJ "questioned [Reyes–Reyes] and asked [him] if anyone in the government or acting on behalf of the government would want to torture him," he answered "no" and "testified that the only individuals that would want to harm him are the thieves on the streets." The IJ concluded that to qualify for withholding of removal, Reyes–Reyes "would have had to [have] reported [the incidents] to an official or to a family member and they would have had to refuse to act upon his outcry." The IJ found that Reyes–Reyes had failed to meet his burden of proof.

The fault in the record is the IJ's failure to address whether any public official might have been "aware[ ] of such activity and thereafter breach[ed] his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 208.18(a)(7). *See Azanor,* 364 F.3d at 1021. I would grant the petition and remand for the purpose of addressing this question.