NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JUL 17 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| CARLOS ANDRES ESCOBAR-ALVARADO, <br><br> Petitioner, <br><br> v. <br><br> MERRICK B. GARLAND, Attorney General, <br><br> Respondent. | No. 21-336 <br><br> Agency No. A099-654-706 <br><br> MEMORANDUM[*] |

On Petition for Review of an Order of the
Department of Homeland Security

Submitted July 17, 2024[**]

Before: WARDLAW and KOH, Circuit Judges, and McMAHON, District Judge.[***]

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***] The Honorable Colleen McMahon, United States District Judge for the Southern District of New York, sitting by designation.

Carlos Andres Escobar-Alvarado, a native and citizen of El Salvador, petitions for review of an Immigration Judge's ("IJ") negative reasonable fear determination, resulting in the denial of his claims for withholding of removal and CAT protection. We have jurisdiction under 8 U.S.C. § 1252(b)(1). We review the IJ's determination for substantial evidence, *Bartolome v. Sessions*, 904 F.3d 803, 811 (9th Cir. 2018), and we deny the petition.

1. A claim for withholding of removal requires a petitioner to demonstrate past persecution (or a likelihood of future persecution) on account of a protected ground. Here, Escobar-Alvarado claims persecution on account of his membership in a particular social group. *Reyes-Reyes v. Ashcroft*, 384 F.3d 782, 788 (9th Cir. 2004). A petitioner is entitled to withholding if the persecution is inflicted by persons or organizations that the government is unable or unwilling to control. *Id.*

First, substantial evidence supports the IJ's conclusion that Escobar-Alvarado failed to establish past persecution. For threats to constitute past persecution, they must be so menacing as to cause significant actual "suffering or harm." *Sangha v. INS*, 103 F.3d 1482, 1487 (9th Cir. 1997). "Persecution is an extreme concept that does not include every sort of treatment our society regards as offensive." *Mansour v. Ashcroft*, 390 F.3d 667, 672 (9th Cir. 2004). Escobar-Alvarado testified that he had suffered a single beating for failing to carry his identification, from which he received a black eye, which did not require

hospitalization. This assault does not constitute past persecution. *Hoxha v. Ashcroft*, 319 F.3d 1179, 1182 (9th Cir. 2003) (finding that petitioner who was harassed several times and beaten once did not demonstrate past persecution). Further, Escobar-Alvarado continued to live in the country for nine months following the attack without suffering further harm. *Id.* Escobar-Alvarado also testified that he was followed and taken against his will on multiple occasions, and that on one occasion, a gang member threatened him with a firearm and stated that the gang "had their eye on [him]." "Threats themselves are sometimes hollow and, while uniformly unpleasant, often do not effect significant actual suffering or harm." *Lim v. INS*, 224 F.3d 929, 936 (9th Cir. 2000). These acts, while "disturbing and regrettable . . . do not evince actions so severe as to compel a finding of past persecution." *Hoxha*, 319 F.3d at 1182.

2. Second, as to Escobar-Alvarado's membership in a particular social group, the IJ correctly concluded that family members of police and those friendly with police are not cognizable as a particular social group because they are not a distinct group within Salvadoran society. *See Chajon v. Sessions*, 748 F. App'x 743, 746 (9th Cir. 2018). The record evidence does not establish that family members of law enforcement were specifically targeted for persecution. The physical attack on Escobar-Alvarado was based on his "failure to carry identification," not for his relationship to police officers. And while Escobar-

3                                                                 21-336

Alvarado cited his nephew's death as evidence that gangs target the family of police, he admitted that he did not know who killed his nephew, because there were no witnesses. Finally, that Escobar-Alvarado lived and worked in rival gang territory is not a protected ground. *See Zetino v. Holder*, 622 F.3d 1007, 1016 (9th Cir. 2010).

3. Third, as to the government's ability or willingness to control the gangs, substantial evidence supports the IJ's conclusion that Escobar-Alvarado has not shown that the Salvadoran government was unable and unwilling to control the forces that allegedly persecuted him. Escobar-Alvarado testified that he did not know the identity of any of the gang members who harmed or threatened him, so he failed to provide the police with sufficiently specific information to permit an investigation or an arrest. *See, e.g.*, *Truong v. Holder*, 613 F.3d 938, 941–42 (9th Cir. 2010) (Petitioners did not establish that the government was unable to unwilling to control persecution where petitioners did not know the identity or motivations of assailants, so the police were unable to locate them).

4. As to Escobar-Alvarado's CAT claim, substantial evidence supports the IJ's conclusion that he did not establish eligibility for CAT protection. To prevail on a claim for relief under CAT, "[a]n applicant bears the burden of establishing that [he] will more likely than not be tortured with the consent or acquiescence of a public official if removed to [his] native country." *Xochihua-Jaimes v. Barr*, 962

F.3d 1175, 1183 (9th Cir. 2020). Mental pain or suffering alone can constitute torture but only if the petitioner experiences "prolonged mental harm caused by . . . [t]he threat of imminent death." 8 C.F.R. § 1208.18(a)(4); *Xochihua-Jaimes*, 962 F.3d at 1183.

Escobar-Alvarado stated that he was beaten on one occasion for failing to carry his identification, and his injuries were minor and did not require hospitalization. On a separate occasion, Escobar-Alvarado was threatened with a firearm and told that the gang would "keep an eye on him." Neither of these incidents establishes that Escobar-Alvarado was threatened with imminent death. Moreover, substantial evidence supports the IJ's conclusion that there was no indication that the government or any person acting in an official capacity would consent to or acquiesce in the torture of the applicant. Escobar-Alvarado testified that all harm and threats were inflicted on him by private actors – gang members – and according to his own testimony, the government has repeatedly tried to target and act against gang members.

5. Substantial evidence supports the IJ's conclusion that the Salvadoran government did not acquiesce in Escobar-Alvarado's harm. "Evidence that the police were aware of a particular crime, but failed to bring the perpetrators to justice, is not in itself sufficient to establish acquiescence in the crime." *Garcia-Milian v. Holder*, 755 F.3d 1026, 1034 (9th Cir. 2014). Here, the Salvadoran

police's inability to solve the crime was due to a lack of information. Escobar-Alvarado testified that he did not know the identities of any of the gang members who harmed or threatened him. In addition, Escobar-Alvarado testified that those who threatened him did not have any connection to the police or the authorities; that the only interaction he witnessed between a police officer and a gang member was a shootout between the two; and that the police unit to which his wife belonged was part of a sting operation which led to the death of one of El Salvador's 100 most wanted criminals.[1]

6. In addition, on appeal Escobar-Alvarado claims that the IJ violated due process by failing to fully consider all of the evidence and by failing to assist him as a *pro se* petitioner with formulating a viable particular social group. For the reasons below, these claims lack merit as well.

Escobar-Alvarado has not established that the IJ failed to adequately consider evidence and credible testimony in support of his claim. "An alien

---

[1] Petitioner points to a Washington Post article titled, "It's so dangerous to police MS-13 in El Salvador that officers are fleeing the country" as evidence that the Salvadoran police is unwilling to control the gangs in the country. Washington Post, *It's so dangerous to police MS-13 in El Salvador that officers are fleeing the country* (Mar. 3, 2019) (last visited Jul. 12, 2024), https://tinyurl.com/ysxrrft2. This article was not presented to either the asylum officer or the IJ and does not form part of the administrative record. We therefore decline to consider it. *Fisher v. INS*, 79 F.3d 955, 963 (9th Cir. 1996) (en banc). Moreover, even if the court were to consider this article, its report that police officers are fleeing El Salvador does not suggest that the Salvadoran government acquiesces in criminal activities. *See Barrientos v. Lynch*, 656 F. App'x 805, 808 (9th Cir. 2016).

attempting to establish that the [agency] violated his right to due process by failing to consider relevant evidence must overcome the presumption that it did review the evidence." *Larita-Martinez v. INS*, 220 F.3d 1092, 1095–96 (9th Cir. 2000). Here, Escobar-Alvarado has not shown that the IJ failed to review the testimony and evidence submitted in an adequate manner. During Escobar-Alvarado's hearing, the IJ listed the documents that she reviewed; read back a summary of the claims he made during his reasonable fear interview with the asylum officer; explicitly stated that her decision rested on a review of the entire record and the authority of 8 C.F.R. § 208; and addressed specific facts on the record at the end of the review proceeding and in her decision. Escobar-Alvarado has not overcome the presumption that the agency properly reviewed the evidence.

7. The IJ did not deny Escobar-Alvarado due process by failing to assist him in identifying a particular social group in order to establish that he has a reasonable fear of persecution on account of a protected ground. "[I]t is the applicant's burden to demonstrate the existence of a cognizable particular social group . . . . And it is the applicant's burden to establish membership in that group." *Diaz-Reynoso v. Barr*, 968 F.3d 1070, 1084 (9th Cir. 2020). Though a "cooperative approach . . . is particularly appropriate" to fulfill evidentiary requirements, *Matter of S-M-J-*, 21 I. & N. Dec. 722, 724 (BIA 1997), the agency is not required to formulate legal theories that could satisfy Escobar-Alvarado's burden. *See*

*Agyeman v. INS*, 296 F.3d 871, 883–84 (9th Cir. 2002) (describing the IJ's duty to fully develop the record by eliciting all relevant facts but stating that "our holding today will not transform IJs into attorneys for aliens appearing pro se in deportation proceedings")

The IJ adequately considered Escobar-Alvarado's proposed particular social groups. The IJ agreed with the asylum officer's conclusion that Escobar-Alvarado's proposed particular social group of "family members of law enforcement in El Salvador" is not cognizable because it lacks social distinction, and the record does not suggest that the IJ did not consider other social groups. Furthermore, Escobar-Alvarado has not shown how he was prejudiced by the IJ's failure to consider whether he was a member of other potential particular social groups because he has not shown how the "outcome of the proceedings would have been different if a more elaborate process were provided." *Morales-Izquierdo v. Gonzalez*, 486 F.3d 484, 495 (9th Cir. 2007). Thus, Escobar-Alvarado has failed to demonstrate that the IJ did not afford him due process.

**PETITION DENIED.**