**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| GABY GISSELLE GUEVARA-SERRANO; M. G. GUEVARA-SERRANO, | No. 23-4420 |
| | Agency Nos. A220-205-134 A220-205-135 |
| *Petitioners*, | |
| v. | |
| | OPINION |
| PAMELA BONDI, Attorney General, | |
| *Respondent*. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted November 20, 2025
San Jose, California

Filed January 20, 2026

Before: Mary M. Schroeder and Michelle T. Friedland,
Circuit Judges, and Karen E. Schreier, District Judge.[*]

Opinion by Judge Schroeder;
Concurrence by Judge Friedland

---

[*] The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota, sitting by designation.

# SUMMARY[**]

## Immigration

The panel granted in part and denied in part a petition for review of the Board of Immigration Appeals' decision affirming the denial of asylum, withholding of removal, and protection under the Convention Against Torture, and remanded for further proceedings.

Petitioner credibly testified that she suffered repeated beatings at the hands of her partner who was a gang member. During a particularly intense beating when her partner was intoxicated, he stabbed Petitioner in the stomach. The abuse frequently occurred when Petitioner attempted to attend her church. The BIA ruled that because Petitioner did not report the beatings to the authorities, she had failed to establish that the government of Honduras was unable or unwilling to protect her. The panel concluded that the evidence in the record compelled the conclusion that Petitioner's reporting of her beatings to the government would have been futile. The panel therefore granted the petition for review as to asylum and withholding and remanded for further proceedings.

The panel did not address Petitioners' CAT claim because it was unexhausted.

Concurring in part and concurring in the judgment, Judge Friedland agreed with the majority that the record compelled the conclusion that the Honduran government

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

was unable or unwilling to protect Petitioner from her partner's abuse. She disagreed, however, with the majority's reading of the BIA decision as to the issue of nexus, understanding the BIA to have also adopted the IJ's conclusion that Petitioner failed to satisfy the nexus element of her claims. In Judge Friedland's view, the IJ's withholding analysis cited the correct "a reason" nexus standard for the withholding claim, but did not properly apply that standard. She would hold that the nexus element of the withholding claim must be considered satisfied on remand.

## COUNSEL

Kelsey Salas (argued) and Ulises Solis (argued), Certified Law Students; Evangeline G. Abriel, Supervising Attorney; Santa Clara University School of Law, Santa Clara, California; for Portioners.

Kathryn McKinney (argued), Attorney; Stephen J. Flynn, Assistant Director; Office of Immigration Litigation; Yaakov M. Roth, Acting Assistant Attorney General; Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

SCHROEDER, Circuit Judge:

Gaby Gisselle Guevara-Serrano and her minor daughter—natives and citizens of Honduras—petition for review of the decision of the Board of Immigration Appeals ("BIA") affirming the denial by an immigration judge ("IJ") of their applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). We grant in part and deny in part the petition for review, and we remand for further proceedings.

Petitioner credibly testified that she suffered repeated beatings at the hands of her partner, Oscar, who was a gang member. During a particularly intense beating when Oscar was intoxicated, he stabbed Petitioner in the stomach. The abuse frequently occurred when she attempted to attend her church.

The IJ denied relief, and the BIA dismissed her appeal. The BIA ruled that because Petitioner did not report the beatings to the authorities, she had failed to establish that the government of Honduras was unable or unwilling to protect her.

In her petition to this court, Petitioner contends that, by ignoring her explanation as to why she did not report, the BIA imposed a per se reporting requirement, which is an error of law. Petitioner further contends that the record compels the conclusion that the government of Honduras was unable or unwilling to protect her. Because we agree that the evidence in the record compels the conclusion that reporting her beatings to the government would have been futile, we grant the petition for review as to asylum and

withholding. We do not address Petitioners' CAT claim because it is unexhausted.

## A. Asylum and Withholding of Removal

The parties agree that the BIA's decision denying the application for asylum and withholding rested on its conclusion that Petitioner had not demonstrated the Honduran authorities were unable or unwilling to protect her and her daughter. The government has briefed no other basis for the agency's conclusion.

The relevant decision of the BIA is confined to a single paragraph. It first states that it is adopting and affirming the IJ's decision on the issue, then points only to the IJ's observation that Petitioner had not reported the abuse to the police or shown that reporting would be futile, noting a lack of any persuasive challenge on appeal regarding her failure to report. The BIA concludes "[a]s such, we affirm the [IJ's] determination . . . ." The full paragraph reads as follows:

> We adopt and affirm the Immigration Judge's decision to deny asylum and withholding of removal under the INA based on her conclusion that the respondents have not demonstrated that the Honduran authorities were or would be unable or unwilling to protect them (IJ at 8-10). *Matter of Burbano*, 20 I&N Dec. 872, 874 (BIA 1994). As the Immigration Judge observed, the respondent did not seek the authorities' protection from her former partner and did not report her former partner to the police, and she did not demonstrate that reporting him to the police would be futile (IJ at 8). The respondents

have not persuasively challenged this determination on appeal. As such, we affirm the Immigration Judge's determination that the respondents have not demonstrated that the authorities were or would be unable to protect them. *Matter of C-G-T-*, 28 I&N Dec. 740, 743 (BIA 2023) (holding that a determination whether the government is unable or unwilling to protect is a fact-specific inquiry that is reviewed for clear error, and the authorities' timely response to a report of harm may be indicative of ability or willingness to protect); *Matter of V-T-S-*, 21 I&N Dec. 792, 799 (BIA 1997) (holding that the evidence did not demonstrate that the government was unable or unwilling to protect respondent).

Petitioner thus contends that the BIA has in effect applied a reporting requirement that our court has consistently rejected. She points to a long line of cases recognizing that a victim need not report in order to establish the government's inability or unwillingness to protect her. *See e.g.*, *Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1069 (9th Cir. 2017) (en banc); *Ornelas-Chavez v. Gonzales*, 458 F.3d 1052, 1057-58 (9th Cir. 2006); *Reyes-Reyes v. Ashcroft*, 384 F.3d 782, 789 n.3 (9th Cir. 2004); *see also Korablina v. INS*, 158 F.3d 1038, 1044-45 (9th Cir. 1998). The government does not meaningfully address these authorities, focusing instead on the nature of the asylum applicant's burden.

Our Circuit law, however, is clear as well as longstanding. We collected and discussed the seminal

authorities in our en banc decision in *Bringas-Rodriguez*. *See* 850 F.3d at 1064-70. In a later case, we explained that, even when a report is filed, some initial responsiveness by local authorities may be relevant, but it does not "automatically equate" to governmental ability and willingness. *J.R. v. Barr*, 975 F.3d 778, 782 (9th Cir. 2020). More recently, we reiterated that the filing of a police report in and of itself is insufficient to establish police ability and willingness to protect. *See Diaz v. Bondi*, 129 F.4th 546, 555-56 (9th Cir. 2025). This was because, "[e]ven if an applicant's ability to file a police report suggests that the police were *willing* to protect [her], that says little if anything about whether they were *able* to do so." *Id*. (alterations in original) (quoting *J.R.*, 975 F.3d at 782). Accordingly, the relevant inquiry is "whether the government both 'could *and* would provide protection.'" *J.R.*, 975 F.3d at 782 (alteration in original) (quoting *Rahimzadeh v. Holder*, 613 F.3d 916, 923 (9th Cir. 2010)).

In *J.R.*, we considered a situation in which the government had promised future action but took none. *Id*. at 782-83. We concluded that the government was either unable or unwilling to provide protection from private persecutors. *Id*. In *Davila*, the government took no action after a first report of persecution, and we held that the BIA erred in disregarding the applicant's explanation for not reporting subsequent abuse. *Davila v. Barr*, 968 F.3d 1136, 1142-43 (9th Cir. 2020). We explained that such disregard of the reasons for not reporting abuse was "tantamount" to a reporting requirement for private persecution. *Id*. at 1143 (quoting *Bringas-Rodriguez*, 850 F.3d at 1065). We repeated what we said in *Bringas-Rodriguez*: "our rule [is] that reporting is not required." *Id*. (quoting *Bringas-Rodriguez*, 850 F.3d at 1066 n.9).

The significance of the government's ability and willingness to protect Petitioner can be traced to the statutory requirements for asylum.  The Attorney General may grant asylum to any person who qualifies as a "refugee."  8 U.S.C. § 1158(b)(1).  The Immigration and Nationality Act defines a "refugee" in terms of the ability to find protection from persecution.  The definition is as follows:

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . .

8 U.S.C. § 1101(a)(42)(A).

The applicable regulation summarizes the asylum applicant's burden.  *See* 8 C.F.R. § 1208.13(b).  It states that a person may qualify as a "refugee" by either showing past persecution or a well-founded fear of future persecution.  *Id*. In our en banc decision in *Bringas-Rodriguez*, we enumerated the elements.  850 F.3d at 1062.  To establish past persecution, an applicant bears the burden of showing that (1) his or her treatment rises to the level of persecution; (2) the persecution was on account of one or more protected grounds; and (3) the persecution was committed by the

government or by forces that the government was unable or unwilling to control.  *Id*.

In this case, the key issue is whether Petitioner satisfied her burden to show the Honduran government's inability or unwillingness to control Oscar's abuse.  Ultimately, we need not decide whether the BIA erred as a matter of law by failing to consider all of the relevant evidence in the record, because the record compels the conclusions that reporting would have put Petitioner in danger and that the government of Honduras was unable or unwilling to protect her.

The BIA pointed to the absence of a report and concluded that Petitioner had not demonstrated reporting would have been futile.  Yet, there was considerable evidence in the record relating to Petitioner's harm by Oscar and the government's inaction with respect to him. Petitioner credibly testified that Oscar was a gang member who abused her, as well as drugs and alcohol.  She testified that Oscar stabbed her, wanted to keep her from going to church, and threatened to kill her if she tried to file a police report.  Petitioner testified further that "nobody wanted to report him out of fear of being killed by him."  She described the one instance in which the police arrested Oscar, but it was after assaulting a man, and the police released Oscar the following day.  The BIA cited none of this evidence.

The failure to report is of course a factor that may be considered in determining whether Petitioner has established the government's inability or unwillingness to protect her or to show reporting would be futile.  *See id.* at 1069.  As support for an argument that the BIA did consider evidence not mentioned in its own decision, the government points to the BIA's citation to *Burbano* as indicating that the BIA may have taken into account evidence relied upon by the IJ to

support the denial of relief.  In *Burbano*, the BIA explained its practice of adopting and relying upon the decision and reasoning of the IJ.  *Matter of Burbano*, 20 I. & N. Dec. 872, 873-74 (BIA 1994).

The IJ did make at least glancing references to the evidence of Oscar's abuse and threats and the Honduran government's actions towards him.  But, the BIA made no mention of such evidence.  Even if we were to assume that the agency considered all of the relevant evidence in the record, that evidence, far from supporting the administrative decision, tends to refute it.  Petitioner testified that the police had arrested Oscar once after he beat a man but almost immediately released him.  The IJ observed that did not necessarily suggest the police would do the same if they arrested Oscar after beating Petitioner.  Yet the record in this case strongly suggests that if the government took no meaningful action in that instance, when Oscar's victim was a man, it was even less likely to take meaningful action when the victim was a woman.  The conclusion compelled by Petitioner's testimony concerning the danger she faced from Oscar, his violent outbursts when she sought refuge at church, and his death threats deterring her from reporting him, as well as by the country conditions report documenting uncontrollable violence against women in Honduras, is that an attempt to report would not only have been futile, it would also have been likely to result in further harm to Petitioner.  Because the record compels the conclusion that the government of Honduras would be either unable or unwilling to protect Petitioner, this element of the asylum and withholding inquiries is satisfied.

## B. CAT

In their appeal to the BIA, Petitioners did not challenge the IJ's denial of their CAT claim, so the BIA appropriately deemed it waived. Accordingly, we do not address Petitioners' CAT claim because it is unexhausted. *See Magana-Magana v. Bondi*, 129 F.4th 557, 573-74 (9th Cir. 2025).

## C. Conclusion

Petitioners' applications for asylum and withholding should not have been dismissed because the record compels the conclusion that the Honduran government was unwilling or unable to protect them. We therefore grant the petition only with respect to asylum and withholding of removal, and remand to the agency for further consideration of the other elements of the asylum and withholding inquiries. The petition is otherwise denied. The temporary stay of removal will remain in place until the mandate issues. Each party shall bear its own costs. *See* Fed. R. App. P. 39(a)(4).

Petition **GRANTED in part; DENIED in part; and REMANDED.**

---

FRIEDLAND, Circuit Judge, concurring in part and concurring in the judgment:

I agree with the majority that the record compels the conclusion that the Honduran government was unable or unwilling to protect Guevara-Serrano from Oscar's abuse. I disagree, however, with the majority's reading of the BIA decision as to the issue of nexus, in that I understand the BIA to have also adopted the IJ's conclusion that Guevara-Serrano failed to satisfy the nexus element of her claims.

"An applicant alleging past persecution has the burden of establishing that (1) [her] treatment rises to the level of persecution; (2) the persecution was on account of one or more protected grounds; and (3) the persecution was committed by the government, or by forces that the government was unable or unwilling to control." *Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1062 (9th Cir. 2017) (en banc) (citation modified).    The second element—whether the persecution was "on account of" a protected ground—is commonly referred to as "nexus."  To satisfy the nexus element for asylum, a petitioner must show that a protected ground was "one central reason" for the persecution she suffered.  *Barajas-Romero v. Lynch*, 846 F.3d 351, 358 (9th Cir. 2017).    Petitioners seeking withholding from removal must show that a protected ground was "'a' reason" for the persecution.  *Id.*  "'[A] reason' is a less demanding standard than 'one central reason.'"  *Id.* at 360.

Here, the IJ concluded that Guevara-Serrano's religion was neither "one central reason" nor "a reason" for Oscar's persecution of her.    I interpret the BIA as having incorporated those conclusions into its decision.  When it affirmed the IJ's decision, the BIA cited *Matter of Burbano*, 20 I&N Dec. 872 (BIA 1994).  "Where the BIA cites its decision in *Burbano* and does not express disagreement with any part of the IJ's decision, the BIA adopts the IJ's decision in its entirety," and "when the BIA adopts the decision of the IJ, we review the IJ's decision as if it were that of the BIA." *Abebe v. Gonzales*, 432 F.3d 1037, 1039-40 (9th Cir. 2005) (en banc) (citation modified).    "If the BIA intends to constrict the scope of its opinion to apply to only one ground upon which the IJ's decision rested, the BIA can and should specifically state that it is so limiting its opinion."  *Id*. at

1040. One way to do so is by noting that some issues are waived. *Id*. at 1040 n.4. Here, the BIA noted that Guevara-Serrano's CAT, political opinion, and particular social group arguments were waived, so the BIA's decision did not incorporate or affirm those parts of the IJ's analysis. The BIA's decision did not suggest that the nexus issue was waived, however, nor could it have, considering that Guevara-Serrano raised nexus in her brief before the BIA.

The majority suggests that the BIA further constricted the scope of what it adopted from the IJ's decision by "adopting and affirming the IJ's decision on the issue," "point[ing] only to the IJ's observation that Petitioner had not reported the abuse to the police or shown that reporting would be futile" and stating that "[a]s such," it affirmed. *See* Maj. Op., at 5. If the passage the majority quotes stood alone, I might agree that the BIA only adopted the IJ's "unable or unwilling" analysis. But it does not stand alone. The paragraph of the BIA decision that follows it reads:

> Accordingly, we affirm the Immigration Judge's determination that the respondents did not establish eligibility for asylum under section 208(a) of the INA, or for withholding of removal under section 241(b)(3) of the INA. *Parussimova v. Mukasey,* 555 F.3d 734, 740-41 (9th Cir. 2009); *Barajas Romero v. Lynch,* 846 F.3d 351, 358-60 (9th Cir. 2017) (holding that a ground protected under the INA must be "a reason" for the persecution in order to establish a nexus for purposes of withholding of removal under section 241(b)(3) of the INA).

The two cases cited in that paragraph are about nexus. The cited pages of *Parussimova* discuss the "one central reason" test for showing nexus in the context of asylum claims, and the *Barajas-Romero* citation references the "a reason" test for nexus in the context of withholding claims. It is unclear why the BIA would have included those citations if it were not adopting the IJ's nexus analysis as an additional reason to deny Guevara-Serrano's application.

In her briefing to our court, Guevara-Serrano argues that the IJ erred in its analysis of nexus for both asylum and withholding. I believe Guevara-Serrano is correct at least as to withholding. The IJ's withholding analysis cited the correct "a reason" nexus standard for the withholding claim, but the IJ did not properly apply that standard. The IJ found Guevara-Serrano's testimony credible, and she testified that Oscar began to abuse her "because [she] was going to church . . . [a]nd he said [she] shouldn't be doing that because that's of the devil, so he started beating [her]" and "telling [her] not to go." Nothing in the record contradicts that account, and it compels the conclusion that religion was at least "a reason" for his abuse.

In addition to agreeing with the majority's reasoning, I would hold that the nexus element of the withholding claim must be considered satisfied on remand.